## UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

|  |  |  |
|---|---|---|
| Deborah S. Hunt<br>Clerk | 100 EAST FIFTH STREET, ROOM 540<br>POTTER STEWART U.S. COURTHOUSE<br>CINCINNATI, OHIO 45202-3988 | Tel. (513) 564-7000<br>www.ca6.uscourts.gov |

Filed: February 08, 2021

Ms. Eaton P. Brown
Mr. Daniel R. Hurley
United States Attorney's Office
211 W. Fort Street
Suite 2001
Detroit, MI 48226

Mr. Harold Z. Gurewitz
Gurewitz & Raben
333 W. Fort Street
Suite 1400
Detroit, MI 48226

                Re: Case No. 20-1148, *USA v. James Warner*
                     Originating Case No. : 2:18-cr-20255-3

Dear Counsel,

   The Court issued the enclosed opinion today in this case.

                                             Sincerely yours,

                                             s/Cathryn Lovely
                                             Opinions Deputy

cc: Ms. Kinikia D. Essix

Enclosure

Mandate to issue

NOT RECOMMENDED FOR PUBLICATION
File Name: 21a0080n.06

Case No. 20-1148

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

FILED
Feb 08, 2021
DEBORAH S. HUNT, Clerk

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff-Appellee, | ) ) ) |
| v. | ) ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN |
| JAMES WARNER, | ) ) |
| Defendant-Appellant. | ) OPINION ) |

BEFORE: COLE, Chief Judge; SILER and GIBBONS, Circuit Judges.

COLE, Chief Judge. James Warner appeals his conviction at trial on ten counts stemming from kickback schemes he engaged in while working at two public agencies in the Detroit area. Shortly before trial, the district court denied Warner's request for an emergency continuance due to his lead counsel's growing back pain. On appeal, Warner argues that the denial jeopardized his Sixth Amendment right to counsel of choice and was thus an abuse of discretion. He also claims that the jury instructions constructively amended his indictment and were so confusing as to constitute plain error. We disagree and affirm Warner's convictions on all counts.

**I. BACKGROUND**

From at least 2010 to 2017, James Warner engaged in corrupt kickback schemes with three contractors under his supervision while employed at the Wayne County Airport Authority

Case No. 20-1148, *United States v. Warner*

(WCAA) and the West Bloomfield Township Water & Sewerage Department. Warner's schemes consisted of supplying the contractors with confidential information to help them win bids with his employers and approving the contractors' inflated invoices for work they did not perform, sometimes even creating the false invoices himself. In return, the contractors paid a cut of their earnings under their contracts back to Warner. In total, Warner received more than $5 million in kickbacks. After an internal audit at WCAA uncovered irregularities in one of the contractors' invoices, the FBI worked with that contractor to record Warner engaging in a similar kickback scheme at the Water & Sewerage Department. When the FBI interviewed Warner in May 2017, he admitted to receiving "bribes" from two of the contractors.

In May 2018, Warner was indicted for this conduct. In January 2019, prosecutors filed a revised ten-count indictment charging Warner with federal program bribery (18 U.S.C. § 666(a)(1)(B), (a)(2)), theft from a federally funded program (§ 666(a)(1)(A)), conspiracy (§ 371) to do the same, conspiracy to commit money laundering (§ 371; § 1956(h)), and obstruction of justice (§ 1519).

Warner retained Robert Harrison to represent him, with Harrison's younger associate, Nicholas Galea, as additional counsel. Primarily because of substantial discovery, the district court granted three continuances delaying trial until May 2019. One of those continuances was partially due to Harrison's health complications from back surgery earlier that year. At an April 9, 2019, status conference discussing possible trial dates, it became apparent that Harrison's, the prosecutors', and the district court's busy schedules left May 2019 as the only opening for Warner's trial if it was to happen any time before fall. The court indicated that the trial would likely consist only of half days. Eventually, the trial was scheduled for May 21.

On May 15, Harrison informed the court by e-mail that he was experiencing increased back pain from his unsuccessful surgery and shared that he would likely need some physical accommodations at trial. Harrison made clear he was not seeking a continuance and made no mention of Warner seeking additional counsel. The next day, the district court notified the parties that trial must conclude by June 5, and that it would likely require some full days. Later that day, Harrison responded that his back pain prevented him from participating in full days of trial. He thus "believe[d] that the best solution is an adjournment" and wrote that he would seek additional counsel to assist him *if* the trial was adjourned. The court responded that if Harrison was seeking a continuance, he should file a motion.

On May 17, four days before trial, Harrison filed a motion to continue, arguing that the court's proposed schedule was an "impossibility" for him because he "could not endure" full days of testimony, among other reasons why the continuance was warranted. The motion did not mention Warner's desire to retain additional counsel. The district court denied the motion later that day, primarily concluding that the logistical difficulties of rescheduling the trial at such a late hour weighed against a continuance. The order noted, however, that the court would "extend whatever courtesy Mr. Harrison requires in the courtroom to address his pain and fatigue issues" and offered a new alternative trial schedule consisting entirely of half days, though with a one-week break in the middle. For reasons not stated in the record, the parties proceeded with the original schedule of nine days of trial from May 21 to June 5.

Harrison participated as lead counsel throughout, conducting voir dire questioning; delivering opening and closing statements; handling the cross-examination of all government witnesses, including two co-conspirator contractors, and the direct examination of Warner; and arguing against the government's motion to remand. The jury convicted Warner on all ten counts.

Warner moved for a new trial under Rule 33 of the Federal Rules of Criminal Procedure, which the district court denied, and then for reconsideration, which the court again denied. Warner timely appealed to this court.

Before us, Warner argues that the denials of motions for a continuance, for a new trial, and for reconsideration were abuses of discretion because the continuance jeopardized his Sixth Amendment right to counsel of choice, both with regard to existing counsel and to additional counsel, and because the court failed to inquire further into the extent of his counsel's physical impairment. For the first time on appeal he also claims that his jury instructions were problematically confusing and that they constructively amended his indictment on Counts One, Five, and Seven.

## II. ANALYSIS

### A. Denial of the Motion to Continue and Sixth Amendment Right to Counsel

#### 1. *Standard of review*

We review a denial of a motion to continue for abuse of discretion. *United States v. King*, 127 F.3d 483, 486 (6th Cir. 1997) (citing *Ungar v. Sarafite*, 376 U.S. 575, 589 (1964)). When affecting a defendant's choice of counsel, "an unreasoning and arbitrary insistence upon expeditiousness in the face of a justifiable request for delay violates the right to assistance of counsel." *Abby v. Howe*, 742 F.3d 221, 227 (6th Cir. 2014) (quoting *Morris v. Slappy*, 461 U.S. 1, 11–12 (1983)) (internal quotation marks omitted). This analysis depends on "the circumstances present in every case, particularly [on] the reasons presented to the trial judge at the time the request is denied." *See Ungar*, 376 U.S. at 589.

### 2. *Warner's right to existing counsel of choice*

Warner argues that the denial of the continuance jeopardized his Sixth Amendment right to counsel of choice because it forced Harrison to represent Warner while physically impaired. Warner points to no authority, however, holding that this right is implicated when the defendant's chosen counsel actually represents him at trial, albeit under constrained circumstances. Indeed, in every case Warner relies on, the defendant was entirely denied representation by his counsel of choice. *See, e.g.*, *United States v. Gonzalez-Lopez*, 548 U.S. 140, 142–43, 152 (2006) (denial of preferred counsel's motions to appear was denial of right to counsel of choice); *see also Linton v. Perini*, 656 F.2d 207, 208, 212 (6th Cir. 1981), *superseded by statute as recognized by Burton v. Renico*, 391 F.3d 764, 771 n.2 (6th Cir. 2004); *United States v. Sellers*, 645 F.3d 830, 832–34 (7th Cir. 2011).

Alternatively, Warner appears to imply he was denied counsel of choice because Harrison was so impaired at trial that his representation was reduced to being a "sham." *Cf.* Appellant Br. at 35 (quoting *Avery v. Alabama*, 308 U.S. 444, 446 (1940)). But nothing of the sort occurred here. The trial transcripts demonstrate that at every turn, whether at voir dire, opening statements, direct and cross-examination of witnesses, or closing arguments, Harrison meaningfully challenged the prosecution's case. Warner's bare assertions that Harrison's back pain impaired his memory, focus, and "meaningful connection" with the jury do not suffice to demonstrate that his representation was a sham.

In short, Warner's claim "confuse[s] the right to counsel of choice—which is the right to a particular lawyer regardless of comparative effectiveness—with the right to effective counsel." *Cf. Gonzalez-Lopez*, 548 U.S. at 148. Because Warner's chosen counsel represented him throughout trial, the proper inquiry should rather be whether this impaired representation

constituted ineffective assistance of counsel. But Warner disavows any argument that his counsel was ineffective. Thus, Warner's Sixth Amendment argument regarding Harrison has no foundation, and his abuse of discretion claim falls with it.

### 3. *Warner's right to additional counsel of choice*

Warner further claims that the denial of a continuance arbitrarily jeopardized his right to seek additional counsel of choice. But even assuming that the Sixth Amendment secures the right to multiple counsel of choice (a question we have yet to settle, *see Abby*, 742 F.3d at 227) and setting aside Warner's silence regarding additional counsel in his motion proper, the denial was not an abuse of discretion.

Harrison's one, informal reference (in his May 16 e-mail), to the *possibility* of seeking additional counsel was grounded in concerns that he was physically unable to participate in full trial days. The district court then directly addressed this concern in its denial of the motion to continue, offering Harrison any physical accommodations he required and proposing a new trial schedule that consisted only of half days. Moreover, several other factors reasonably weighed against the continuance: Warner's motion came only four days before trial was scheduled to begin; Warner already had one additional counsel, Galea, representing him alongside Harrison; both his counsel had had weeks to prepare for trial; and the parties' and the court's busy schedules would have required a continuance of several months at least. Thus, based on "the reasons presented to the trial judge at the time," *see Ungar*, 376 U.S. at 589, the denial was not "unreasoning and arbitrary," *see Abby*, 742 F.3d at 227. *Cf. Ungar*, 376 U.S. at 590–91 (denial of continuance is *not* denial of due process when defendant was given five days to find counsel and prepare for a contempt hearing).

Case No. 20-1148, *United States v. Warner*

### 4. The district court's duty of inquiry

Warner also claims that the court abused its discretion by failing to inquire further into his reasons for requesting a continuance, that is, into the extent of Harrison's physical impairment. Warner relies on our substitution of counsel cases, which have held that the trial court has a duty of inquiry when it receives notice of a defendant's "serious dissatisfaction" with counsel. *See, e.g.*, *Benitez v. United States*, 521 F.3d 625, 632 (6th Cir. 2008); *see also United States v. Iles*, 906 F.2d 1122, 1130–31 (6th Cir. 1990). But this line of cases does not control here, since—as Warner concedes—he was not in fact dissatisfied with Harrison. *See Iles*, 906 F.2d at 1131 (no duty to inquire when the district is not on notice of the defendant's dissatisfaction with counsel).

To the extent Warner implies that we should extend this duty of inquiry to contexts beyond a defendant's dissatisfaction with counsel, he fails to articulate any argument for such a duty. We will therefore not consider the claim. *See McPherson v. Kelsey*, 125 F.3d 989, 995 (6th Cir. 1997) (perfunctory arguments are waived).

### B. Denial of Warner's Motions for a New Trial and for Reconsideration

#### 1. Standard of review

We review for abuse of discretion both denials of a Rule 33 motion for new trial and of a motion for reconsideration. *United States v. Munoz*, 605 F.3d 359, 366 (6th Cir. 2010) (Rule 33 motion); *Papas v. Buchwald Capital Advisors, LLC (In re Greektown Holdings, LLC)*, 728 F.3d 567, 573 (6th Cir. 2013) (motion for reconsideration).

#### 2. Merits

Warner's arguments regarding the denials of the motions for new trial and for reconsideration are almost entirely redundant with his arguments regarding the motion to continue—namely, that the district court's denial of the latter violated his right to counsel of choice

- 7 -

and the court's duty to inquire into the extent of Harrison's back injury. For all the reasons outlined above, however, the district court did not abuse its discretion in denying the motion to continue. *See supra* Part II.A. Thus its denial of a new trial on the same grounds is not an abuse of discretion either.

Warner additionally claims that the district court's denial of his Rule 33 motion erroneously concluded he had no Sixth Amendment right to multiple counsel of choice. But that is incorrect: the district court expressly noted that our circuit has not yet decided this question. It then reasoned that regardless of whether Warner had a right to multiple counsel of choice, Warner never requested additional counsel in his motion to continue or any other motion.

### C. Constructive Amendment and Confusing Jury Instructions

#### 1. *Standard of review*

When, as here, a defendant raises claims of constructive amendment and erroneous jury instructions for the first time on appeal, we review them for plain error. *United States v. Kuehne*, 547 F.3d 667, 682 (6th Cir. 2008) (constructive amendment); *United States v. Tragas*, 727 F.3d 610, 616 (6th Cir. 2013) (jury instructions). Plain error means that "(1) there was an error (2) that was plain, (3) that affected a substantial right, and (4) seriously affected the fairness, integrity, or public reputation of the judicial proceedings." *Tragas*, 727 F.3d at 616. From another angle, "[i]n the context of challenges to jury instructions, plain error requires a finding that, taken as a whole, the jury instructions were so clearly erroneous as to likely produce a grave miscarriage of justice." *United States v. Semrau*, 693 F.3d 510, 528 (6th Cir. 2012) (quoting *United States v. Morrison*, 594 F.3d 543, 546 (6th Cir. 2010)).

Case 2:18-cr-20355-VAR-RSW ECF No. 296, PageID.3426 Filed 02/08/21 Page 10 of 13
Case 2:18-cr-20355-VAR-RSW ECF No. 206-2, PageID.3426 Filed 02/08/21 Page 10 of 13 (30 of 13)
Case No. 20-1148, *United States v. Warner*

*2. Merits*

Constructive amendment occurs when "a combination of evidence *and* jury instructions [] effectively alters the terms of the indictment and modifies the essential elements of the charged offense to the extent that the defendant may well have been convicted of a crime other than the one set forth in the indictment." *United States v. Hynes*, 467 F.3d 951, 962 (6th Cir. 2006). The defendant bears the burden of demonstrating constructive amendment. *Id.*

Warner argues that Jury Instruction 15 constructively amended his indictment because it framed Counts One, Five, and Seven as conspiracies for the contractors to *offer or pay* Warner a bribe in violation of 18 U.S.C. § 666(a)(2), whereas the indictment framed those same counts as conspiracies for Warner to *solicit or accept* a bribe in violation of 18 U.S.C. § 666(a)(1)(B). But Instruction 15 does not outline the elements the jury must consider for federal program bribery; it merely provides a factual summary of the conspiracies at issue in Counts One, Five, and Seven. For the specific elements of the bribery offense underlying these counts, the jury was referred to Instruction 26, which frames Warner's offense as § 666(a)(1)(B) *payee* bribery, just as the indictment does. Thus, taken together, the instructions did not present a risk that Warner would be "convicted of a crime other than the one set forth in the indictment," *Hynes*, 467 F.3d at 962, and his constructive amendment claim fails.

At most, the jury might have found the inconsistent shifts between whether Warner accepted or solicited bribes—in the indictment, Instruction 15, and elsewhere—mildly confusing. Contrary to Warner's assertion, however, this potential confusion does not warrant reversing his convictions on the relevant counts. Indeed, the elements of conspiracy to pay and conspiracy to solicit a bribe merge completely when the co-conspirators are themselves the bribe's payor and payee, as they were here. *See* 1 Modern Federal Jury Instructions-Criminal ¶ 27A.02 (2020 Lexis)

- 9 -

Case No. 20-1148, *United States v. Warner*

(§ 666(a)(1)(B) elements); *id.* ¶ 27A.03 (§ 666(a)(2) elements). Thus, any conflating of payor and payee bribery would not have affected Warner's substantial rights with regard to his conspiracy convictions.

Likewise, Warner's contention that Instruction 26 is so confusing as to constitute plain error is not persuasive. Warner finds it problematic that Instruction 26 references facts that are particular only to Count Nine, when the conspiracy Counts One, Five, and Seven depend on this instruction as well. But even if momentarily confusing, it is unlikely the jury experienced much difficulty in cross-referencing the legal elements in Instruction 26 to the facts of Counts One, Five, and Seven as outlined in Instructions 15–17, which specifically note that such a cross-reference is required. In any case, this potential confusion is not the sort that produces a "grave miscarriage of justice." *Semrau*, 693 F.3d at 528 (quoting *Morrison*, 594 F.3d at 546).

Warner additionally argues that the jury instructions' omission of a specific unanimity instruction for conspiracy Counts One and Five is grounds for reversal. Counts One and Five charge Warner with conspiracy under 18 U.S.C. § 371 to commit two underlying offenses: theft from a federally funded program and federal program bribery under 18 U.S.C. § 666(a)(1)(A) and (1)(B), respectively. We have previously noted that, when considering a multi-offense conspiracy, jurors must unanimously agree which underlying offense(s) the defendant conspired to commit. *Tragas*, 727 F.3d at 616. Warner's jury instructions, in contrast, made no mention of this specific unanimity requirement. But our Pattern Jury Instructions omit it as well, noting that it is "unclear" when exactly a specific unanimity instruction is required for multi-object conspiracies. *See* Sixth Circuit Pattern Criminal Jury Instructions 3.02 & Use Note. Thus, even if the omission was in error, where the law is unclear the error is not "plain." *See United States v. Price*, 901 F.3d 746, 751 (6th Cir. 2018); *see also United States v. Katuramu*, 174 F. App'x 272, 279 (6th Cir. 2006)

- 10 -

("[I]nstructions are not plainly erroneous where they track the circuit's pattern jury instructions[.]"). Moreover, Warner's unanimity claim fails regardless because substantial evidence supported his conviction on both counts. For this reason, he cannot demonstrate that the instruction's omission affected his substantial rights. *Tragas*, 727 F.3d at 616 (ample evidence of an underlying offense negates prejudice from lack of unanimity instruction).

*Evidence underlying Count One*. Dispositive here is the fact that the jury convicted Warner on Count Two as well, which charged him with the same conduct that was an underlying offense in Count One, namely, theft from a federally funded program under § 666(a)(1)(A) that occurred around September 30, 2013, in partnership with William Pritula. Thus, the jury specifically convicted Warner of at least one of the offenses underlying Count One.

*Evidence underlying Count Five.* Regarding Count Five, at trial the jury heard testimony establishing that: contractor Douglas Earles had received $409,000 in total payments from WCAA contracts and had transferred over 25% of it, a total of nearly $113,500, into accounts controlled by Warner during the same period; Warner surreptitiously submitted contract bids and invoices on Earles' behalf; and some of those invoices were for work that Earles never performed. This evidence amply supports Warner's conviction for conspiracy with Earles to commit theft from a federally funded program. Warner therefore cannot show that the lack of unanimity instruction affected his substantial rights. *See Tragas*, 727 F.3d at 616.

Finally, Warner argues that, if we vacate his conspiracy convictions on Counts One, Five, and Seven, it would undermine the basis of his money laundering convictions on Counts Four, Six, and Eight. Because Warner offers no persuasive grounds for reversing the three conspiracy convictions, his argument regarding the money laundering convictions fails as well.

## III. CONCLUSION

For the foregoing reasons we affirm the district court's orders and its judgment against Warner on all counts.